The plaintiff, Mary A. Spradlin, in three appeals consolidated for our review, appeals from four rulings in the case below: an order denying her petition for a temporary restraining order against the City of Birmingham (the "City"); a subsequent order denying a permanent injunction, requested in the same petition; a judgment entered in favor of the City on a counterclaim by the City for back taxes; and a summary judgment entered in favor of numerous other defendants relating to a claim by Spradlin for damages based on alleged interference with Spradlin's business.
Specifically, Spradlin sought from the circuit court both temporary and permanent injunctive relief that would force the City to rescind a prior revocation of her business license. The trial court denied both requests for relief. In addition, Spradlin named 30 other persons as defendants in a claim for damages based on interference with her business stemming from the revocation. The court entered a summary judgment for a number of these other defendants. Shortly thereafter, the City counterclaimed against Spradlin for past due business, occupational, and sales *Page 77 
taxes. The court entered a judgment in favor of the City on the counterclaim.[1]
 FACTS
Spradlin owned an automobile salvage or "junk yard" business at the time the City revoked her business license in 1989. The revocation of the business license was precipitated by Spradlin's failure to maintain a surety bond policy on her business, as is required by Birmingham General City Code §12-11-32 for the protection of owners of stolen property. Notice was sent to Spradlin of the impending revocation, by certified mail, but it was never accepted by Spradlin,[2] and the city council revoked her business license. A City police official delivered the notice of the revocation to Spradlin's business. Immediately thereafter, Spradlin paid the premium on the surety bond, which was back-dated to cover the time she had been in operation without the bond. Then she met with the Public Safety Commission of Birmingham in an effort to have the license revocation rescinded. After she produced evidence that she was in compliance with the bond requirement, the commission advised her that it still declined to reinstate her license because of complaints that had been lodged against her business. The commission told her that her recourse was to take the matter up with the city council.
Spradlin requested a hearing with the city council. At some time before this hearing, her attorney withdrew from representation and, at her request, the hearing was continued. On the day of the hearing, Spradlin did not appear; instead, she sent her husband to request another continuance. Her husband told the city council that she was ill. The council declined a second continuance and reviewed numerous complaints about Spradlin's business practices. The council denied Spradlin's request to rescind its earlier order revoking the license.
In the circuit court, Spradlin urged that those persons who had complained before the city council had been untruthful. She indicated that her husband's family was hostile toward her business because they disliked her husband, who was one of her employees. She stated that untruthful testimony relating to her company's business practices was "manufactured" by her husband's family and offered by outsiders at the family's behest.[3]
Spradlin sought a temporary restraining order and a permanent injunction to allow her to stay in business and sought damages based on the revocation. She named as defendants the City and 30 other persons; that number included persons who had complained to the city council; Spradlin family members; and various City employees and officials. The City counterclaimed for back taxes on Spradlin's business. The Spradlin family members moved for summary judgments. The court heard ore tenus testimony and decided all claims against Spradlin.
 ISSUES PRESENTED
Although Spradlin has appealed from a summary judgment in favor of members of the Spradlin family (case 1900697) and from a judgment in favor of the City on its counterclaim for back taxes (case 1910232), she offers no arguments or authority relating to these appeals. Therefore, we affirm the trial court's judgments in those two cases. Henderson v. Alabama A M University, 483 So.2d 392 (Ala. 1986); Bogle v. Scheer,512 So.2d 1336 (Ala. 1987); Ala.R.App.P. 28(a)(5).
In case 1900698 Spradlin argues that the City acted arbitrarily in denying her a business license and, therefore, that the trial court erred in determining otherwise. *Page 78 
Spradlin cites O'Bar v. Town of Rainbow City, 269 Ala. 247,112 So.2d 790 (1959).
In O'Bar, Ann O'Bar appealed from a decision by the town council and the mayor of Rainbow City refusing to rescind a prior revocation of her business license. The evidence showed that the revocation followed an incident wherein two local law enforcement officials had observed liquor being served on the premises of O'Bar's Skyline Club, in violation of local law. There was also evidence that the Skyline Club was in operation until 2:00 or 3:00 o'clock in the morning. Nearby residents had complained of loud noise emanating from the club at all hours of its operation.
We stated that "[t]here is no contract, vested right or property [interest] in a license as against the power of a state or municipality to revoke it in a proper case. The license cannot, however, be arbitrarily revoked." Id.,269 Ala. at 249, 112 So.2d at 791.
We further stated that "where there is substantial evidence to support the action of the city governing authorities in the revocation of the license, it cannot be said that they acted arbitrarily or abused their discretion." Id. We found such "substantial evidence" in that case.
In the present case, the evidence in support of the city council's refusal to rescind the revocation of Spradlin's business license is also substantial. The city council reviewed the statements of eight persons, who cited specific events regarding Spradlin's business practices. Only one of these statements was from a Spradlin family member. In substance, all these statements related to allegations of egregiously unfair business dealings or fraud by Spradlin's husband, David Spradlin, as an employee of Ms. Spradlin's business. The council was presented a "rap" sheet containing information relating to numerous criminal charges and convictions against Spradlin's husband, spanning a period of 20 years, from 1968 to 1988. The council also received evidence that Spradlin had not ceased her operations after the council revoked her business license. An undercover police officer stated that he had made a purchase at her business after the revocation.
The trial court determined that the City did not act arbitrarily in refusing to rescind the revocation. That determination was clearly supported by substantial evidence. Spradlin's bare allegations that those complaining to the city council were untruthful do not alter this conclusion. In evaluating the sufficiency of the evidence in support of the trial court's judgment, a reviewing court must "indulge all favorable presumptions" and the trial court's conclusion will not be disturbed "unless [it is] palpably erroneous or manifestly unjust." Maxwell v. City of Birmingham, 271 Ala. 570,574, 126 So.2d 209 (1961).
Spradlin apparently also attempts in her brief to raise issues relating to due process. She cites Maxwell, but does not discuss, in any meaningful way, how Maxwell supports her positions on appeal. She says only:
 "O'Bar's rule was again cited in Maxwell v. City of Birmingham, 271 Ala. 570, 126 So.2d 209 (1961). Maxwell subsequently attacked the notice provision of the meeting [sic; he attacked, as inadequate, the notice of the hearing on a proceeding to revoke his plumber's certificate], citing Federal Trade Commission v. National Lead Co., 352 U.S. 419
[77 S.Ct. 502, 1 L.Ed.2d 488], and Morgan v. [United States], 304 U.S. 1 [58 S.Ct. 773, 82 L.Ed. 1129], for the proposition that '[t]he requirements of a fair administrative hearing included notices of contentions of opposing party and an opportunity to meet them.' [See the statement by the reporter of decisions summarizing the contentions of the appellant in Maxwell.] It is interesting to compare Maxwell's 'inaction' in this regard to those actions taken by David Spradlin at the Council meeting where [he] did all the things Mr. Maxwell failed to do."
This vague comment is Spradlin's only reference to due process issues.
We have stated that it is not the function of this court to do a party's legal research. *Page 79 
See Henderson, 483 So.2d at 892. Similarly, we cannot create legal arguments for a party based on undelineated general propositions unsupported by authority or argument. Ala.R.App.P. 28(a)(5); Brittain v. Ingram, 282 Ala. 158, 209 So.2d 653
(1968) (analyzing the predecessor to Ala.R.App.P. 28); Ex parteRiley, 464 So.2d 92 (Ala. 1985). In the present case, we would be hard pressed to even glean the general proposition.
We conclude that, for purposes of review, Spradlin has not adequately presented any issues relating to due process. Thus, she has waived any argument relating to such issues. See Ala.R.App.P. 28(a)(5); Brittain; and Riley.
1900697 — AFFIRMED.
1900698 — AFFIRMED.
1910232 — AFFIRMED.
HORNSBY, CJ., and MADDOX, SHORES and HOUSTON, JJ., concur.
[1] All claims underlying these appeals have been adjudicated, and final judgments entered.
[2] Spradlin states that she was never aware of any attempt to deliver the notice. The record suggests the possibility that, in the considerable clutter of her business, such a postal notice went unnoticed.
[3] Based on these allegations, Spradlin named a number of her husband's family members as defendants, seeking damages from them. She also sued a number of those persons who had complained to the council.